## A95A2430. HADDON v. DEPARTMENT OF HUMAN RESOURCES.
### (469 SE2d 434)

SMITH, Judge.

The Department of Human Resources (DHR) ex rel. Catherine Wood, filed a "non-AFDC" petition[1] against Haddon to recover child support for Anne Wood, Catherine Wood's minor child. Haddon filed a motion to dismiss based on an order entered in probate court in 1978. The order approved and incorporated a settlement agreement entered into by Haddon and Catherine Wood. The agreement had been approved by the guardian ad litem appointed to represent Anne Wood. The trial court denied the motion, and we granted Haddon's petition for interlocutory review.

The procedural history of this case is fundamental to our analysis. In early June 1977, a warrant was issued against Haddon reciting that he was the father of Anne Wood, a minor, and that he had abandoned the child. Subsequently, on April 3, 1978, Haddon and Catherine Wood executed a "contract and agreement" in which they expressed their desire "to forever settle, adjust and compromise the [abandonment] action as well as any and all other actions that may be brought regarding any child support, medical expenses or questions of paternity regarding the minor child for all times, past, present and future." They agreed that paternity was disputed but that Haddon would pay Wood $4,400 in return for Wood's release "from any and all claims, actions, . . . suits, whether legal or equitable for child support . . . paternity claims of every kind and nature . . . arising out of the birth of Anne Elizabeth Wood." Wood also agreed to indemnify Haddon and hold him harmless in the event "she or anyone on her behalf or on behalf of her minor child . . . ever initiates any action . . . growing out of the birth" of the child "at any time

---

[1] The petition for recovery of child support recites that it is "non-AFDC." OCGA § 19-11-6 (c) provides that DHR "shall accept applications for child support enforcement services from any proper party or person notwithstanding the fact that the child or children do not receive public assistance." The record does not expressly reveal the manner in which DHR became involved in this case. Under the statute, however, it is clear that even though DHR appears in the caption, Catherine Wood initiated the action by submitting an application for child support enforcement. Moreover, Black's Law Dictionary, 5th ed., defines "ex rel." or "ex relatione" as "[l]egal proceedings which are instituted by the attorney general (or other proper person) in the name and behalf of the state, but on the information *and at the instigation of an individual who has a private interest in the matter*." (Emphasis supplied.)

whether past, present or future." The agreement recited it was to be a full release and complete settlement of any liability claimed by Wood.

In early May 1978, the guardian ad litem appointed on behalf of the minor approved the agreement, and Wood filed in probate court a verified petition to compromise a disputed claim, also signed by the guardian ad litem. The petition tracked the language of the contract and agreement, reciting that paternity was in dispute but that Wood and Haddon wished to settle the abandonment action "as well as any and all other actions that may be brought regarding any child regarding child support . . . or questions of paternity regarding the minor child." It recited that Wood agreed to accept $4,400 from Haddon in consideration of Haddon's release from future claims for paternity or child support. The petition also recited that Wood agreed to indemnify Haddon in the event future actions were initiated to recover child support. The probate court entered an order incorporating the terms of the agreement, allowing Wood to compromise "and make a full and final settlement in accordance with the terms of the . . . contract and agreement." Additionally, the abandonment action in state court was nolle prossed.

On November 8, 1994, DHR ex rel. Catherine A. Wood filed a petition seeking to collect *future*[2] child support for the minor child, over sixteen years after the contract and agreement was signed, approved by the guardian, and incorporated into the probate court order, and approximately four months before the child's eighteenth birthday. Haddon moved to dismiss the petition. The trial court denied the motion and certified its order for interlocutory review. We conclude that the petition should have been dismissed because Wood was barred from bringing the action under the doctrine of laches, and we reverse.

We note initially the well-established rule that child support may not be waived. "Children . . . are not property, and absent a clear legislative declaration otherwise their support rights may not be bartered away by their parents." (Citations and punctuation omitted.) *Nelson v. Mixon,* 265 Ga. 441, 442 (457 SE2d 669) (1995). Anne Wood's support rights, however, were not "bartered away." Instead, her entitlement to support from Haddon and the amount of that support were issues that were settled by agreement and court order. A child's right to support extends only to support from the child's parents, OCGA § 19-7-24, or to others with a legal duty of support, and in most cases, paternity must be established before a duty of support is imposed. See generally *Hughes v. Dulock,* 207 Ga. App. 492, 493 (1)

---

[2] There was no claim that the sum agreed upon in the settlement and approved by the court was not paid. This action seeks only future child support.

(428 SE2d 406) (1993). Here, Wood never availed herself of the opportunity to establish Haddon's paternity.

"The doctrine of laches not only forbids relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right *but also authorizes courts of equity to interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights.*" (Citations and punctuation omitted; emphasis supplied.) *Ehrhart v. Brooks*, 231 Ga. 272, 275 (3) (201 SE2d 464) (1973). "In determining whether there has been laches, various things are to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation thereof, whether during the delay the evidence of the matters in dispute has been lost or become obscure . . . whether the party charged with laches had an opportunity to have acted sooner, and whether the party charged with laches acted at the first possible opportunity." (Citation and punctuation omitted.) Id. at 275-276. See also *Johnson v. Sears*, 199 Ga. 432 (34 SE2d 541) (1945).

In *Ehrhart*, four years after an adoption judgment was entered, plaintiff filed an action against defendants, the adoptive parents of her natural child, seeking to set aside the judgment on the ground that her consent to the adoption had been obtained fraudulently. Id. at 275. Before filing the action, plaintiff had filed a complaint against defendants alleging they were unfit and had petitioned for habeas corpus in an attempt to bring the issue of custody before the court. Id. The issue of fraudulent consent was raised for the first time in the action to set aside the judgment, and the Georgia Supreme Court found that plaintiff was barred from seeking to set aside the petition.

Here, the action was filed nearly *seventeen* years after entry of the order incorporating the agreement made by Wood and Haddon and approved by the guardian ad litem. Wood did "exactly nothing" to attempt to set aside the probate court judgment during this time. *Cannon v. Fulton Nat. Bank*, 206 Ga. 609, 613 (57 SE2d 917) (1950). On the eve of the child's majority, having had knowledge of a potential claim for the "whole of this period," *Johnson v. Sears*, supra, 199 Ga. at 436, Wood attempted to ignore the *court-approved settlement to which she was a party*. No reason for the delay appears in the record.

To allow Wood to pursue a claim so long ago settled and approved by the probate court would be inequitable and would violate the time-honored and practical principle of finality of settlements and court orders. "A compromise of a dispute is binding on the parties. The law favors compromises, and a promise made in extinguishment of a doubtful claim is sufficient to support a valid contract. Where parties to litigation have entered into a definite, certain, and unam-

biguous settlement agreement, which is not denied, the trial court should make the agreement the judgment of the court, thereby terminating the litigation. . . . In the absence of fraud or mistake, a party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing." (Citations and punctuation omitted.) *Palmer v. Palmer*, 198 Ga. App. 639, 640-641 (1) (402 SE2d 369) (1991).

The terms of the settlement agreement were clear and unambiguous, and its existence has not been denied. By her failure to respond to requests for admissions of fact submitted by Haddon, Wood has admitted that she, as well as a guardian ad litem, executed a contract and agreement resolving all issues involved in this action and that a court entered an order approving the terms of the contract and agreement. The agreement definitely, clearly, and unambiguously recited that it was intended to be a full and final settlement of all claims, including claims for paternity and child support. Wood's own conduct precipitated the settlement agreement, and she cannot now circumvent that agreement.

We recognize that the availability of blood tests may now make the ascertainment of true biological paternity somewhat less difficult. This potential claim, however, was not only compromised and settled in writing with all parties represented, including the child, but was also approved and incorporated into an unappealed order of the probate court. To allow a challenge to such an order and settlement at this late date because of advances in technology would put virtually any settlement at risk. Such a result would create the potential for great injustice to parties relying on settlements and court orders reciting that they represent full and final disposition of all potential claims. We will not allow a party to "slumber on [her] rights, lull[ing] the opposing party into a false sense of litigative security," *Fulton County v. Threatt*, 210 Ga. App. 266, 268 (2) (435 SE2d 672) (1993), and then years later prevail against that party in litigation on those same issues. Attacks even on void judgments may be precluded when the litigant has so slumbered. Id.

Under the facts of this case, after considering all the factors involved in determining whether a litigant has waived the right to bring an action, we hold that Wood was barred by the doctrine of laches from seeking to recover child support.

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 23, 1996.

*Furlong & Franco, Walter W. Furlong*, for appellant.

*Thomas J. Charron, District Attorney, Charles E. Clark, Assistant District Attorney, Michael J. Bowers, Attorney General, Wil-*

liam C. Joy, Senior Assistant Attorney General, Kevin M. O'Connor, David A. Hooker, Assistant Attorneys General, for appellee.